## Commonwealth v. Harris

*Jerome B. Apfel*, Assistant District Attorney, for Commonwealth.

*Gilbert S. Levitt*, for defendant.

SPORKIN, J., February 1, 1961.—This matter came before us on three bills of indictment charging defendant, John D Harris, with (1) shooting with intent to murder;[1] (2) committing a crime of violence while armed,[2] and (3) carrying a concealed deadly weapon.[3] Trial by jury having been waived, the court heard the evidence and adjudged defendant guilty on each bill of indictment. A motion for new trial was filed by defendant's counsel but was subsequently withdrawn.[4] Thereafter, defendant was sentenced to undergo a term of imprisonment of nine months to three years on bill of indictment no. 376; sentence on the two remaining bills was suspended.

[1] Bill no. 376 as of April sessions, 1960. See Act of June 24, 1939, P. L. 872, sec. 711, 18 PS §4711.

[2] Bill no. 377. See Uniform Firearms Act of June 24, 1939, P. L. 872, sec. 628(*b*) as amended, 18 PS §4628(*b*).

[3] Bill no. 378. See Act of June 24, 1939, P. L. 872, sec. 416, 18 PS §4416.

[4] At the trial defendant was represented by able counsel, who vigorously defended his client's rights. Defendant was not heard to object when counsel withdrew his motion for new trial at the bar of the court. Defendant now seeks to appeal the judgment of sentence which the court subsequently rendered.

The testimony convinced us beyond a reasonable doubt that defendant was guilty of the offenses charged in each of the bills of indictment.

The Commonwealth's witnesses were completely credible. Police Officer William Jackson testified: that while he was driving a police car on Cherry Street, westbound from 56th Street, on March 31, 1960, at about 11:55 p.m., he heard two shots which apparently came from an alley between Cherry and Appletree Streets; that as he stopped his vehicle in front of the alley, four shots were fired directly at him;[5] that he saw the defendant, whom he followed down the alley to Appletree Street; that he pursued defendant into a taproom, following him into a washroom; that he there observed defendant as he placed ten bullets under a urinal; that he arrested the defendant and found 22 additional bullets on his person.

Police Officer James W. Barrett, who arrived at the scene in response to a call for assistance from Officer Jackson, testified that: he conducted a search of the area and found a 38-calibre pistol in an ashcan on Appletree Street; he found the gun at midnight on the evening in question and that it had been fired six times, and the bullets found in defendant's possession when apprehended matched the gun.

Thus there was presented to us a direct and positive identification of defendant by the officer who made the arrest, who witnessed the shooting and was in fact the victim of the attempt to kill involved in this case.

---

[5] N. T., Page 6

"By Mr. Levitt:
"Q. How many shots were then fired?
"A. Four.
"Q. Were those fired directly at you?
"A. The muzzle flashed.
"Q. Pardon me?
"A. Yes, sir, the muzzle flashed."

Defendant attempted to establish that it was not he but rather one Robert Mack who was responsible for the shooting. Defendant testified that: he had been with Robert Mack during the earlier part of that day; Robert Mack had purchased the gun in question; after they had been drinking that evening Mack asked defendant to accompany him to the alley and hold the bullets; Mack, and not defendant, held the gun and fired it; and that they fled when they saw Officer Barrett.

Called as a defense witness, Mack denied having purchased, possessed or fired the gun, and denied having been with defendant when the gun was fired.

Defendant also sought to show by other witnesses that subsequent to the firing of the gun, Mack had returned to the scene of the shooting and had gone to the home of one of the witnesses, saying that he had left a gun in their ashcan and that he wanted to retrieve it. Two witnesses testified to this effect. One of these was a person to whom Mack allegedly made the request to look for the gun, and the other was a person who allegedly overheard the conversation. The gist of this testimony was that Mack retrieved the gun from the ashcan at about 12:30 a.m. on April 1, 1960.

The difficulty with this testimony is that it is in direct conflict with the credited testimony of Officer Barrett that he, Barrett, recovered the pistol in question a minute or two before midnight on March 31st. Obviously, if Mack had taken the gun from the ashcan in the manner described by defendant's witnesses, the gun would not have been there for Officer Barrett to find. We find the testimony of defendant and his witnesses incredible. We believe Officer Barrett.

With respect to bill no. 376, we find the requisite intent to murder from the fact that defendant fired the gun directly down a narrow alley at the police car in which Officer Jackson was sitting.

The motion for new trial having been withdrawn, defendant is now procedurally barred from complaint. However, since the issues here involved are questions of credibility and of fact, and since the court, exercising its function as trier of fact, determined that defendant's guilt had been proved beyond a reasonable doubt, defendant's request for review should be dismissed on its merits.